# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MICHAEL KENT, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | JURY TRIAL DEMANDED |
| ALLERGAN PLC, BRENTON L. SAUNDERS, NESLI BASGOZ, JOSEPH H. BOCCUZI, CHRISTOPHER W. BODINE, ADRIANE M. BROWN, CHRISTOPHER J. COUGHLIN, CAROL ANTHONY DAVIDSON, THOMAS C. FREYMAN, MICHAEL E. GREENBERG, ROBERT J. HUGIN, PETER J. MCDONNELL, ABBVIE, INC., and VENICE SUBSIDIARY, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) | CLASS ACTION |
| Defendants. | ) ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action stems from a proposed transaction announced on June 25, 2019 (the "Proposed Transaction"), pursuant to which Allergan plc ("Allergan" or the "Company") will be acquired by AbbVie, Inc. ("Parent"), a Delaware corporation, and Venice Subsidiary, LLC, a Delaware limited liability company ("Merger Sub," and together with Parent, "AbbVie").

2.      On June 25, 2019, Allergan's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with AbbVie.  Pursuant to the terms of the Merger Agreement, Allergan's

stockholders will receive $120.30 in cash and 0.8660 of a newly issued share of Parent common stock for each share of Allergan common stock they own.

3.     On September 16, 2019, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction, which scheduled a stockholder vote on the Proposed Transaction for October 14, 2019.

4.     The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.     This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Allergan common stock.

9.      Defendant Allergan is an Ireland corporation and maintains its principal executive offices at Clonshaugh Business and Technology Park, Coolock, Dublin D17 E400, Ireland. Allergan's common stock is traded on the New York Stock Exchange under the ticker symbol "AGN."

10.     Defendant Brenton L. Saunders is President, Chief Executive Officer, and Chairman of the Board of the Company.

11.     Defendant Nesli Basgoz is a director of the Company.

12.     Defendant Joseph H. Boccuzi is a director of the Company.

13.     Defendant Christopher W. Bodine is a director of the Company.

14.     Defendant Adriane M. Brown is a director of the Company.

15.     Defendant Christopher J. Coughlin is a director of the Company.

16.     Defendant Carol Anthony Davidson is a director of the Company.

17.     Defendant Thomas C. Freyman is a director of the Company.

18.     Defendant Michael E. Greenberg is a director of the Company.

19.     Defendant Robert J. Hugin is a director of the Company.

20.     Defendant Peter J. McDonnell is a director of the Company.

21.     The defendants identified in paragraphs 10 through 20 are collectively referred to herein as the "Individual Defendants."

22.     Defendant Parent is a Delaware corporation and a party to the Merger Agreement.

23.     Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action as a class action on behalf of himself and the other public

stockholders of Allergan (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

25.     This action is properly maintainable as a class action.

26.     The Class is so numerous that joinder of all members is impracticable.  As of June 21, 2019, there were approximately 327,823,649 shares of Allergan common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

27.     Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

28.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

29.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

30.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company and the Proposed Transaction*

31.     Allergan is a global pharmaceutical leader focused on developing, manufacturing, and commercializing branded pharmaceutical, device, biologic, surgical, and regenerative medicine products for patients around the world.

32.     The Company markets a portfolio of brands and products primarily focused on four key therapeutic areas, including medical aesthetics, eye care, central nervous system, and gastroenterology.

33.     On June 25, 2019, Allergan's Board caused the Company to enter into the Merger Agreement with AbbVie.

34.     Pursuant to the terms of the Merger Agreement, Allergan's stockholders will receive $120.30 in cash and 0.8660 AbbVie shares for each share of Allergan common stock they own.

35.     According to the press release announcing the Proposed Transaction:

AbbVie Inc. (NYSE: ABBV) and Allergan plc (NYSE: AGN) announced that the companies have entered into a definitive transaction agreement under which AbbVie will acquire Allergan in a cash and stock transaction for a transaction equity value of approximately $63 billion, based on the closing price of AbbVie's common stock of $78.45 on June 24, 2019). . . .

Structure and Governance

Upon completion of the transaction, AbbVie will continue to be incorporated in Delaware as AbbVie Inc. and have its principal executive offices in North Chicago, Ill. AbbVie will continue to be led by Richard A. Gonzalez as chairman and chief executive officer. Two members of Allergan's Board, including chairman and chief executive officer, Brent Saunders, will join AbbVie's Board upon completion of the transaction.

Transaction Details

Under the terms of the Transaction Agreement, Allergan Shareholders will receive 0.8660 AbbVie Shares and $120.30 in cash for each Allergan Share that they hold, for a total consideration of $188.24 per Allergan Share.2 The transaction represents a 45% premium to the closing price of Allergan's Shares on June 24, 2019.

AbbVie anticipates that the Acquisition will provide annual pre-tax synergies and other cost reductions of at least $2 billion in year three while leaving investments in key growth franchises untouched. The synergies and other cost reductions will be a result of optimizing the research and early stage portfolio, and reducing overlapping R&D resources (~50%), driving efficiencies in SG&A, including sales and marketing and central support function costs (~40%), and eliminating redundancies in manufacturing and supply chain, and leveraging procurement spend (~10%). The synergies estimate excludes any potential revenue synergies.3

AbbVie is expected to generate significant annual operating cash flow, which will support a debt reduction target of $15 to $18 billion before the end of 2021, while also enabling a continued commitment to Baa2/BBB or better credit rating and continued dividend growth.

It is expected that, immediately after the closing of the Acquisition, AbbVie Shareholders will own approximately 83% of AbbVie on a fully diluted basis and the Allergan Shareholders will own approximately 17% of AbbVie on a fully diluted basis.

36.     The Merger Agreement contains a "no solicitation" provision that prohibits the

Individual Defendants from soliciting alternative proposals and severely constrains their ability to

communicate and negotiate with potential buyers who wish to submit or have submitted

unsolicited alternative proposals.  Sections 5.3(a) of the Merger Agreement provides:

Subject to any actions which Allergan is required to take so as to comply with the requirements of the Takeover Rules, from the date of this Agreement until the earlier of Effective Time and the valid termination of this Agreement pursuant to and in accordance with Article 9, except as otherwise set forth in this Section 5.3, Allergan shall not, and it shall cause its Subsidiaries and its and their respective directors, officers and employees not to, and it shall use reasonable best efforts to cause its and its Subsidiaries' other Representatives not to, directly or indirectly:

(i) solicit, initiate or take any action to knowingly facilitate or knowingly encourage (including by way of furnishing information to any Person in connection with) the submission of any Allergan Alternative Proposal or any indication, proposal or inquiry that would reasonably be expected to lead to an Allergan Alternative

Proposal;

(ii) enter into or participate in any discussions or negotiations with, furnish any information relating to Allergan or any of its Subsidiaries to, or afford access to the business, properties, assets, books or records of Allergan or any of its Subsidiaries to, otherwise cooperate in any way with, or knowingly assist, participate in, knowingly facilitate or knowingly encourage any effort by, any Third Party that would reasonably be expected to seek to make, or has made, an Allergan Alternative Proposal (except to notify such Person as to the existence of the provisions of this Section 5.3);

(iii) (A) withdraw or qualify, amend or modify in any manner adverse to AbbVie, the Scheme Recommendation or the recommendation contemplated by Section 3.6(c), if applicable, (B) fail to include the Scheme Recommendation in the Scheme Document or the Proxy Statement, (C) recommend, adopt or approve or publicly propose to recommend, adopt or approve any Allergan Alternative Proposal or (D) fail to reaffirm the Scheme Recommendation in a statement complying with Rule 14e-2(a) under the Exchange Act with regard to an Allergan Alternative Proposal or in connection with such action by the close of business on the 10th Business Day after the commencement of such Allergan Alternative Proposal under Rule 14e-2(a) (any of the foregoing in this clause (iii), an "Allergan Change of Recommendation");

(iv) take any action to make any "moratorium", "control share acquisition", "fair price", "supermajority", "affiliate transactions" or "business combination statute or regulation" or other similar anti-takeover laws and regulations under applicable Law inapplicable to any Third Party or any Allergan Alternative Proposal; or

(v) enter into any agreement in principle, letter of intent, term sheet, merger agreement, acquisition agreement, option agreement or other agreement providing for or relating to an Allergan Alternative Proposal (other than an Allergan Alternative Proposal NDA).

Nothing contained herein shall prevent the Allergan Board from (x) complying with Rule 14e-2(a) under the Exchange Act with regard to an Allergan Alternative Proposal, so long as any action taken or statement made to so comply is consistent with this Section 5.3(a) or (y) making any required disclosure to the Allergan Shareholders if the Allergan Board determines in good faith, after consultation with outside legal counsel, that the failure to take such action would reasonably be expected to be inconsistent with applicable Law; provided that any Allergan Change of Recommendation involving or relating to an Allergan Alternative Proposal may only be made in accordance with the provisions of Section 5.3(b), Section 5.3(c), Section 5.3(d) and Section 5.3(e). For clarity, a "stop, look and listen" disclosure or similar communication of the type contemplated by Rule 14d-9(f) under the Exchange Act shall not constitute an Allergan Change of Recommendation.

Additionally, Allergan shall, and shall cause its Subsidiaries and its and their respective directors, officers and employees to, and shall use reasonable best efforts to cause its and its Subsidiaries' other Representatives to, cease immediately and cause to be terminated any and all existing activities, discussions or negotiations, if any, with any Third Party conducted prior to the date of this Agreement with respect to any Allergan Alternative Proposal or with respect to any indication, proposal or inquiry that could reasonably be expected to lead to an Allergan Alternative Proposal. Allergan will promptly (and in each case within 72 hours from the date of this Agreement) request from each Person (and such Person's Representatives) that has executed a confidentiality agreement during the last eighteen months in connection with its consideration of making an Allergan Alternative Proposal to return or destroy (as provided in the terms of such confidentiality agreement) all confidential information concerning Allergan or any of its Subsidiaries and shall promptly (and in each case within 72 hours from the date of this Agreement) terminate all physical and electronic data access previously granted to each such Person.

37.     Additionally, the Company must promptly advise AbbVie of any proposals or inquiries received from other parties.  Section 5.3(c) of the Merger Agreement states:

Allergan shall notify AbbVie promptly (but in any event within 48 hours) if any Allergan Alternative Proposal or any indication, proposal or inquiry by a Third Party that would reasonably be expected to make an Allergan Alternative Proposal, is received by Allergan. Each such notice shall be provided in writing and shall identify the Third Party making, and, to the extent applicable, the material terms and conditions (including price) of, any such Allergan Alternative Proposal, indication, proposal or inquiry. Following such initial notice, Allergan shall keep AbbVie reasonably informed, on a reasonably current basis, of any material changes in the status and details of any such Allergan Alternative Proposal, indication, proposal or inquiry and shall promptly (but in no event later than 24 hours after receipt) provide to AbbVie copies of all material correspondence and written materials sent or provided by or to Allergan or any of its Subsidiaries (or any of its or their respective Representatives) that describes any terms or conditions of any Allergan Alternative Proposal. Neither Allergan nor any of its Subsidiaries will enter into any agreement with any Person which prohibits Allergan from providing any information to AbbVie in accordance with, or otherwise complying with, this Section 5.3.

38.     Moreover, the Merger Agreement contains a "fiduciary out" provision permitting the Board to change its recommendation of the Proposed Transaction under extremely limited circumstances, and grants AbbVie a "matching right" with respect to any "Superior Proposal"

made to the Company.  Section 5.3(e) of the Merger Agreement provides:

> The Allergan Board and Allergan, as applicable, shall not take any of the actions contemplated by Section 5.3(d) unless prior to taking such action (i) Allergan has notified AbbVie, in writing at least three Business Days before taking such action, that Allergan intends to take such action, which notice attaches, in the case of an Allergan Change of Recommendation pursuant to Section 5.3(d)(A) in response to an Allergan Superior Proposal or the termination of this Agreement pursuant to Section 5.3(d)(B) and Section 9.1(a)(ii)(B), the most current version of each proposed Contract providing for or related to such Allergan Superior Proposal (including any Contract relating to financing or expense reimbursement) and the identity of the Third Party(ies) making the Allergan Superior Proposal or, in the case of an Allergan Intervening Event, a reasonably detailed description of the facts relating to such Allergan Intervening Event, (ii) if requested by AbbVie, during such three Business Day period, Allergan and its Representatives shall have discussed and negotiated in good faith with AbbVie (to the extent that AbbVie desires to so discuss or negotiate) regarding any proposal by AbbVie to amend the terms of this Agreement in response to such Allergan Superior Proposal or other potential Allergan Change of Recommendation and (iii) after such three Business Day period, the Allergan Board determines in good faith, after consultation with a financial advisor of nationally recognized reputation and outside legal counsel and taking into account any proposal by AbbVie to amend the terms of this Agreement, that in the case of any such action in connection with an Allergan Alternative Proposal, such Allergan Alternative Proposal continues to constitute an Allergan Superior Proposal (it being understood and agreed that in the event of any amendment to the financial terms or other material terms of any such Allergan Superior Proposal, a new written notification from Allergan consistent with that described in clause (i) of this Section 5.3(e) shall be required, and a new notice period under clause (i) of this Section 5.3(e) shall commence, during which notice period Allergan shall be required to comply with the requirements of this Section 5.3(e) anew, except that such new notice period shall be for two Business Days (as opposed to three Business Days)). After delivery of such written notice pursuant to this Section 5.3(e), Allergan shall promptly inform AbbVie of all material developments affecting the material terms of any such Allergan Superior Proposal and shall promptly provide AbbVie with copies of any additional written materials received or sent that are material to such Allergan Superior Proposal.

### *The Proxy Statement Omits Material Information, Rendering It False and Misleading*

39.	Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction, which scheduled a stockholder vote on the Proposed Transaction for October 14, 2019.

40.     As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

41.     First, the Proxy Statement omits material information regarding the Company's and AbbVie's financial projections.

42.     With respect to the Company's financial projections, the Proxy Statement fails to disclose, for each set of projections: (i) all line items used to calculate EBITDA; (ii) all line items used to calculate unlevered free cash flow; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

43.     With respect to AbbVie's financial projections, the Proxy Statement fails to disclose: (i) all line items used to calculate EBITDA; (ii) all line items used to calculate unlevered free cash flow; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

44.     The Proxy Statement also fails to disclose the synergies expected to result from the Proposed Transaction.

45.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

46.     Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, J.P. Morgan Securities LLC ("JPM").

47.     With respect to JPM's Analyst Price Targets analyses, the Proxy Statement fails to disclose: (i) the price targets observed by JPM in the analyses; and (ii) the sources thereof.

48.     With respect to JPM's Public Trading Multiples analyses, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by JPM in the analyses.

49.     With respect to JPM's Selected Transaction Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by JPM in the analysis.

50.     With respect to JPM's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow for Allergan and AbbVie; (ii) the ranges of terminal values for Allergan and AbbVie; (iii) the individual inputs and assumptions underlying the perpetual growth rates ranging from 0.5% to 1.5% and negative 1.0% to 0.0%; (iv) the individual inputs and assumptions underlying the range of discount rates from 8.5% to 9.5%; and (v) the number of fully diluted shares outstanding of Allergan and AbbVie.

51.     With respect to JPM's Value Creation Analysis, the Proxy Statement fails to disclose the estimated value of the synergies used by JPM in the analysis.

52.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

53.     Third, the Proxy Statement omits material information regarding potential conflicts of interest of JPM.

54.     The Proxy Statement fails to disclose the amount of compensation and financial benefits JPM and its affiliates receive for acting as an agent bank and lender under outstanding credit facilities of Allergan.

55.     Similarly, the Proxy Statement fails to disclose the amount of compensation and financial benefits JPM and its affiliates receive for acting as an agent bank and lender under outstanding credit facilities of AbbVie.

56.    Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

57.    Fourth, the Proxy Statement fails to disclose the timing and nature of all communications regarding future employment and directorship of the Company's officers and directors, including who participated in all such communications.

58.    Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

59.    The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Transaction; (ii) Recommendation of the Allergan Board of Directors and Allergan's Reasons for the Transaction; (iii) Opinion of J.P. Morgan Securities LLC; and (iv) Allergan Unaudited Prospective Financial Information.

60.    The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Allergan**

61.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

62.    The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in

light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Allergan is liable as the issuer of these statements.

63.      The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

64.      The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

65.      The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

66.      The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

67.      By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

68.      Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act**
**Against the Individual Defendants and AbbVie**

69.      Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

70.     The Individual Defendants and AbbVie acted as controlling persons of Allergan within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Allergan and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

71.     Each of the Individual Defendants and AbbVie was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

72.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

73.     By virtue of the foregoing, the Individual Defendants and AbbVie violated Section 20(a) of the 1934 Act.

74.     As set forth above, the Individual Defendants and AbbVie had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934

Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: September 24, 2019                    **RIGRODSKY & LONG, P.A.**

                                        By:  */s/ Gina M. Serra*
                                             Brian D. Long (#4347)
                                             Gina M. Serra (#5387)
                                             300 Delaware Avenue, Suite 1220
**OF COUNSEL:**                              Wilmington, DE 19801
                                             Telephone: (302) 295-5310
**RM LAW, P.C.**                             Facsimile: (302) 654-7530
1055 Westlakes Drive, Suite 300              Email: bdl@rl-legal.com
Berwyn, PA 19312                             Email: gms@rl-legal.com
Telephone: (484) 324-6800
Facsimile: (484) 631-1305                    *Attorneys for Plaintiff*